## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**EARNEST L. NELSON, JR.,**                                             **PLAINTIFF**

**V.**                                                          **NO. 4:03CV-295-P-B**

**JO ANNE B. BARNHART**
**COMMISSIONER OF SOCIAL SECURITY,**                          **DEFENDANT**


### REPORT AND RECOMMENDATION

Plaintiff, Earnest L. Nelson, Jr., seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of Social Security

Administration (the "Commissioner"), which denied his claim for Social Security Disability

Income benefits under Title II and Supplemental Security Income benefits under Title XVI.  The

matter has been assigned to the undersigned United States Magistrate Judge for review and

issuance of a report and recommendation.  Having fully considered the record and the applicable

law, I find as follows.

### Procedural History

Plaintiff protectively filed applications for Disability Insurance Benefits and

Supplemental Security Income payments on October 25, 2000,  (Tr. 47, 57), alleging a disability

onset date of October 23, 2000, due to degenerative joint disease of the knees.  (Tr. at 12, 62).

His applications were denied initially and on reconsideration.  (Tr. 20-35).

In a hearing decision dated December 13, 2002, an administrative law judge (ALJ) found

that plaintiff was not disabled under the Act.  (Tr. 12-19).  The ALJ's hearing decision became

perfected as the final decision of the Commissioner when the Appeals Council denied plaintiff's

request for review on April 10, 2003.  (Tr. 4-6).  The ALJ's final hearing decision is now ripe for

review under Section 205(g) of the Act, 42 U.S.C. §405(g).

**Facts**

At the time of the hearing before the ALJ, plaintiff was 37 years old. (Tr. 173). He testified that he graduated from high school and acquired at least three hours of college credit in electronics while in the Army. (Tr. 173-4). At the time of the hearing, plaintiff was enrolled in a community college full time, working toward a degree in education. (Tr. 174). He said he was taking five classes, two of which were online. (Tr. 190). The three classes he took on campus were approximately one hour and ten minutes each, and he attended them on Tuesdays and Thursdays. (Tr. 190).

Plaintiff said he last worked as a health and physical education teacher at an elementary school from August 2001 until January 2002. (Tr. 175). His other past jobs included work as an avionics technician for the Army, a stand-up forklift driver, digester machine loader, sales associate for AutoZone and laborer for the Sunflower County Road Department. (Tr. 175-82). He said he could not go back to any of his past work due to his knees. (Tr. 182). He said his knee trouble started while working as a digester machine loader for International Paper. (Tr. 183). Later, while operating the stand-up forklift at Dollar General, he began to experience numbness and tingling that didn't go away. (Tr. 184). His doctor advised that he not work for six weeks. Despite his doctor's advice, plaintiff returned to work early. *Id.* He was only able to work for two hours, however. *Id.*

Plaintiff said he underwent arthroscopic surgery of his left knee in August 2002 at a VA Hospital. (Tr. 184-5). He said the surgery did not seem to help much. (Tr. 185-6). He said his knees got stiff and painful after prolonged sitting, and he had to keep his legs extended. (Tr. 186). He said he could drive for only 1 ½ to 2 hours at a time. (Tr. 186-7). He said he could sit and stand 30 to 45 minutes at a time. (Tr. 187-8). He said it was uncomfortable to climb, kneel

or bend, however. (Tr. 188). He said he could walk a mile, and he rode his bike for exercise. (Tr. 189).

After a review and evaluation of the medial evidence of record, plaintiff's hearing testimony, (Tr.173-90), and the testimony of a vocational expert, (Tr. 192-6), the ALJ concluded plaintiff was not disabled. (Tr. 12-19). The ALJ found plaintiff had the residual functional capacity (RFC) to perform a significant range of light work and that there were a significant number of jobs in the national economy that plaintiff could do. (Tr. 19).

**Standard of Review**

This Court reviews the Commissioner's/ALJ's decision only to determine whether it is supported by "substantial evidence" on the record as a whole and whether the proper legal standards were applied. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, in applying the substantial evidence standard, this Court scrutinizes the record to determine whether such evidence is present. This Court will not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Id.*, citing *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *see also Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).

**Law**

To be considered disabled and eligible for benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide

procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599

& Appendices, §§ 416.901 to 416.998 1995. The regulations include a five-step evaluation

process for determining whether an impairment prevents a person from engaging in any

substantial gainful activity.[1] *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990). The five-step inquiry

terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett v.*

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id*. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id*. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id*. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id*. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994)("Medical-Vocational Guidelines").

*Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. *Id.* If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *Greenspan*, 38 F.3d at 236; *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir.1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant," *Id.*; *accord Selders*, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history," *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

**Analysis**

The ALJ applied the five step evaluation process in this case. At step one, the ALJ found plaintiff had not engaged in substantial work activity since his alleged disability onset date. (Tr.18). At step two, the ALJ found plaintiff's degenerative joint disease of the knees was a severe condition under the regulations. (Tr. 18). Accordingly, plaintiff met his burden of proof at steps one and two. However, at step three, the ALJ determined that plaintiff's impairment did not meet or medically equal any listed impairment. *Id.*

Of the listings of impairments in Appendix 2, Subpart P, Regulations No. 4, the Court finds only two listed impairments are relevant to plaintiff's condition. Of the categories of impairments, Section 101.00 incorporates disorders of the musculoskeletal system. Within this category, Listing 101.02 concerns major dysfunction of a joint due to any cause. In order for

plaintiff's condition to meet this listing, there must be "gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), *and* findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." When a major peripheral (hip, knee or ankle) weight-bearing joint is involved, there has to be a resulting inability to ambulate effectively. Additionally, Listing 101.03 addresses "reconstructive surgery or surgical arthrodesis of a major weight-bearing joint with inability to ambulate effectively. . . and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."

Both of the aforementioned Listings incorporate a requirement of inability to ambulate effectively. Having reviewed the medical evidence and plaintiff's subjective testimony, there is no evidence that plaintiff encountered any problems ambulating. Indeed, he testified that he could walk a mile, and he rode his bike for exercise. Furthermore, X-rays and MRI's of plaintiff's knees were virtually normal and showed only early minimal degenerative changes, which were greater in the right knee. (Tr. 97, 99, 151, 154 and165). Because of this, the Commissioner's finding that plaintiff's condition did not meet or medically equal any listed impairment is supported by substantial evidence.

At step four of the sequential evaluation process, the ALJ determined that plaintiff retained the residual functional capacity (RFC) to do light work which allowed for a sit/stand option and did not require more than frequent stooping and balancing and only occasional crouching, crawling, climbing and kneeling. (Tr. 15-16). The ALJ stated he considered plaintiff's subjective complaints as well as the objective medical evidence and other evidence in plaintiff's file. (Tr. 16). Having thoroughly reviewed the record, I find substantial evidence supports the ALJ's RFC determination.

Medical records from the VA Hospital dated June 13, 2001, indicate that plaintiff had

6

chronic knee pain and minimal early degenerative changes upon x-ray, with the right greater than the left. (Tr. 154). Plaintiff had been seen by rheumatology, and the etiology of degenerative changes to his knees was unknown. *Id.* His medication had been changed from Celebrex to ibuprofen, and he was instructed on muscle strengthening exercises and advised to remain active within limitations, including no kneeling, squatting or climbing. *Id.* Finally, plaintiff was advised that he should look for work that was primarily "sedentary." *Id.*

However, though plaintiff complained of chronic disabling pain, the ALJ found his subjective complaints about his limitations were credible only to the extent that he was limited to the aforementioned RFC. (Tr. 16). The ALJ based his credibility determination on the fact that plaintiff's complaints of limitation and pain were not in line with the objective medical evidence. As stated above, plaintiff's X-rays and MRI's indicated only early minimal degenerative changes. Additionally, the ALJ pointed out that plaintiff testified that following his disability onset date, he taught elementary physical education classes from September 2001 until January 2002; he attended college classes; and he rode his bike for exercise. As such, plaintiff's daily activities did not appear to be significantly limited. The ALJ's findings regarding the debilitating effect of subjective complaints are entitled to considerable judicial deference. *James v. Bowen*, 793 F.2d 702 (5th Cir.1986).

Thus, notwithstanding plaintiff's June 2001 medical report indicating that he was completely restricted from kneeling, squatting and climbing and suggesting he was limited to sedentary work, plaintiff's testimony regarding his daily activities in conjunction with the objective medical evidence weighed in favor of his being able to perform a limited range of light work. *See* 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on

the evidence we have ."). Accordingly, I find substantial evidence supports the ALJ's RFC determination.

At step five, though the ALJ determined plaintiff could not do his past relevant work, he found plaintiff was capable of performing other work. (Tr. 17). At this point the burden shifted to the Social Security Administration to show that there were other jobs existing in significant numbers in the national economy that the plaintiff could perform, consistent with his residual functional capacity, age, education and work experience. Here, the ALJ relied on the testimony of the vocational expert in conjunction with Medical Vocational Guideline Rules 202.21 and 202.22. The vocational expert testified plaintiff's avionics technician skills would transfer to lighter jobs such as communications expert, of which there were hundreds of jobs in Mississippi and thousands available nationally. Additionally, the vocational expert testified that a person with the RFC and limitations assigned to plaintiff could perform the unskilled jobs of assembler and general office clerk, of which thousands of jobs existed in the local and national economies. Plaintiff presented no evidence on this record showing that he is not able to perform any of these jobs. Based on this, the undersigned finds the ALJ properly relied on the testimony of the vocational expert in conjunction with the Medical-Vocational Guidelines in rendering his conclusion that plaintiff was not disabled and could perform other work that existed in significant numbers in the national economy.

**Recommendation**

For the aforementioned reasons, it is recommended that the decision of the Commissioner be affirmed.

The parties are referred to Local Rule 72.2(D) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within

ten days of this date. Failure to timely file written objections to the proposed findings,

conclusions and recommendations contained in this report will bar an aggrieved party, except

upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings

and legal conclusions accepted by the district court. *Douglass v. United Services Automobile*

*Association*, 79 F.3d 1415 (5th Cir. 1996).

       **RESPECTFULLY SUBMITTED** this, the 20th day of January, 2006.


                                    **/s/ Eugene M. Bogen**
                                       **U. S. MAGISTRATE JUDGE**